UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DEBORAH DESANE,

                        Plaintiff,                Case No. 3:15-CV-50 (GTS)

v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY

                        Defendant.
_____

APPEARANCES:                                                  OF COUNSEL:

COUGHLIN & GERHART, LLP                       SCOT G. MILLER, ESQ.
  Counsel for Plaintiff
P.O. Box 2039
Binghamton, NY 13902-2039

SOCIAL SECURITY ADMINISTRATION            LAUREN E. MYERS, ESQ.
OFFICE OF REG'L GEN. COUNSEL–REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## **<u>DECISION and ORDER</u>**

       Currently before the Court, in this Social Security action filed Deborah Desane ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") seeking disability insurance benefits pursuant to 42 U.S.C. § 405(g), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 9, 10.) For the reasons set forth below, Plaintiff's cross-motion is denied and Defendant's cross-motion is granted.

I.      RELEVANT BACKGROUND

   A.      Factual Background

Plaintiff was born on July 2, 1958. She completed a high school education. Her employment history consists of work as an electrical assembler. Generally, her alleged disability consists of the following: bilateral carpal tunnel syndrome; ankle pain; degenerative disc disease of the cervical, lumbar, and thoracic spine; right knee arthritis; major depressive disorder; and personality disorder-NOS ("Not Otherwise Specified"). Plaintiff's alleged disability onset date is August 20, 2009, and her last date insured is December 31, 2014.

   B.      Relevant Procedural History

On November 22, 2011, Plaintiff applied for Social Security disability insurance benefits under Title II. Her application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On May 8, 2013, Plaintiff appeared before the ALJ, Jennifer Gale Smith. (T. 43-80.) On July 11, 2013, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 18-28.) On November 18, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1.) Thereafter, Plaintiff timely sought judicial review in this Court.

   C.      The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 18-28.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (T. 20.) Second, the ALJ found that Plaintiff's following impairments were severe: bilateral carpal tunnel syndrome; ankle pain; degenerative

disc disease of the cervical, lumbar, and thoracic spine; right knee arthritis; major depressive disorder; and personality disorder-NOS. (*Id.*) Third, the ALJ found that Plaintiff's impairments do not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 22.) In doing so, the ALJ considered Listings 1.02A, 1.02B, 1.04, 12.04, 12.06, and 12.08. (T. 22-24.) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b)[1] up to the semi-skilled level. (T. 24.) Fifth, and finally, the ALJ found that Plaintiff is able to perform her past relevant work as an electrical assembler. (T. 28.)

## II. THE PARTIES' BRIEFINGS ON THE ALJ'S DECISION

### A. Plaintiff's Arguments

Generally, Plaintiff makes two arguments in support of her motion for judgment on the pleadings. (Dkt. No. 9 at 1 [Pl.'s Mem. of Law].) First, she argues that the ALJ failed to properly evaluate the medical opinion evidence. (*Id.* at 16.) Second, she argues that the ALJ's decision is not supported by substantial evidence. (*Id.* at 20.)

---

[1] According to the regulations,

> [l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b).

3

### B. Defendant's Arguments

Generally, Defendant makes two arguments in response. (Dkt. No. 10 at 5 [Def.'s Mem. of Law].) First, Defendant argues that the ALJ properly considered all appropriate factors and properly weighed the medical opinion evidence. (*Id.*) Second, Defendant argues that the ALJ's decision was supported by substantial evidence. (*Id.*)

## III. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is

5

> afflicted with a "listed" impairment is unable to perform substantial
> gainful activity. Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the claimant's severe
> impairment, he has the residual functional capacity to perform his past
> work. Finally, if the claimant is unable to perform his past work, the
> [Commissioner] then determines whether there is other work which the
> claimant could perform. Under the cases previously discussed, the
> claimant bears the burden of the proof as to the first four steps, while the
> [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Evaluation of Medical Evidence

Plaintiff argues that the ALJ did not follow the treating physician rule contained in 20 C.F.R. § 404.1527(c)(2). (Dkt. No. 9 at 16 [Pl.'s Mem. of Law].) That regulation states in part that the ALJ shall give a treating source's opinion "controlling weight" if it is supported by "medically acceptable clinical and laboratory diagnostic techniques," and is "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). If the opinion is not afforded controlling weight, the ALJ must determine the proper weight by considering (1) the length, nature, and extent of the treatment relationship, (2) how well the medical source supports his or her opinion with evidence, (3) how consistent the opinion is with regard to the entire record, (4) whether the source had a relevant specialization, and (5) any other relevant factors. 20 C.F.R. § 404.1527(c).

Plaintiff further argues that the ALJ "turned the treating physician rule on its head" when assigning weight to the other medical opinions. (Dkt. No. 9 at 18 [Pl.'s Mem. of Law].) When assigning weight to the opinion of a medical source other than that a treating physician, an ALJ must still consider the opinion's supportability, its consistency with the record, the medical

source's specialization, any examining relationship that existed, and any other relevant evidence. 20 C.F.R. § 404.1527(c)(1)-(6).

Here, the ALJ assigned "limited weight" to the medical source statement prepared by Dr. Anna Marie Ward on September 24, 2012. (T. 27 [citing T. 372-74].) The ALJ did so because she found that the statements regarding Plaintiff's limitations were not consistent with the medical records, including Dr. Ward's own treatment notes. (T. 27.) Dr. Ward opined on September 24, 2012, that Plaintiff could occasionally grasp and do fine manipulation, that she had pain rated "10/10," and that she could occasionally lift up to twenty (20) pounds. (T. 373-74.) Dr. Ward also opined that, in an eight hour work day, Plaintiff could stand for only two hours, walk for two hours, and be off-task more than half of the time. (*Id.*) As indicated above, Plaintiff argues that the ALJ should have given these opinions "controlling" weight. (Dkt. No. 9 at 17-18 [Pl.'s Mem. of Law].) However, Dr. Ward's opinions of September 2012 were not entitled to controlling weight, because they were not supported by the medical evidence of record, and substantial evidence contradicted the opinions.

As an initial matter, Dr. Ward's opinion regarding Plaintiff's grip and manipulation is unfounded and contradicted by her own treatment notes. Before Plaintiff was laid off from her position, she told Dr. Ward that the carpal tunnel syndrome was the "same as ever." (T. 298.) In November 2009, Plaintiff told Dr. Ward that she had been laid off, but that she was looking for work and felt that she had "no work restrictions." (T. 291.) While Dr. Ward noted that standing on a concrete floor for a prolonged time would "not be good for her ankle or back," she did not appear to have any objection to Plaintiff's job search following the layoff. (T. 291.) Plaintiff refused surgical treatment for her carpal tunnel because she was "getting along well enough"

7

without the treatment, and she had "learned to live with it." (T. 293.) Significantly, Dr. Ward noted that Plaintiff's grip was intact bilaterally and that her dexterity was "OK" in both hands. (T. 294.) No subsequent treatment notes indicate any worsening in Plaintiff's capabilities. Without exception, the treatment notes from that date forward indicate that Plaintiff's functional status had not changed. (T. 236, 243, 247, 254, 258, 261, 267, 274, 278, 282, 285, 288.) This substantial evidence directly contradicts Dr. Ward's opinion that Plaintiff could grip and manipulate only "occasionally."

Furthermore, Dr. Ward's opinion regarding Plaintiff's pain is likewise unsupported or contradicted by her treatment notes. Across her longitudinal treatment with Dr. Ward, Plaintiff never reported pain close to the "10/10" that Dr. Ward opined. The most severe pain Plaintiff complained of during treatment was only "6/10," and that related to temporary shoulder pain, rather than any of Plaintiff's severe impairments. (T. 253-54.) Throughout much of the course of treatment, Plaintiff reported no pain at all. (T. 232, 236, 247, 258, 261, 267, 274, 278, 282.) There is therefore no support for Dr. Ward's "10/10" opinion, or her opinion that Plaintiff's pain would cause the degree of limitations contained in the functional assessment.

For these reasons, Dr. Ward's opinions in the September 2012 functional assessment are not supported by medically acceptable clinical and laboratory diagnostic techniques, and are inconsistent with the other substantial evidence. The ALJ was therefore entitled to assign little weight to the opinions of Dr. Ward, despite her status as a treating physician.

Plaintiff argues that any inconsistency in Dr. Ward's opinion implicated the ALJ's duty to complete the record, because "an ALJ may not rely on the absence of evidence supporting the opinions of a plaintiff's expert without making an affirmative effort to fill any gaps in the

8

record." (Dkt. No. 9 at 19 [Pl.'s Mem. of Law].) However, Dr. Ward's treatment notes contain no obvious gaps. Rather, they contain only contradictions and inconsistencies between Plaintiff's complete medical history and Dr. Ward's final opinion. "Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan,* 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citing *Perez v. Chater*, 77 F.3d 41, 48 [2d Cir. 1996]).

Plaintiff further argues that the ALJ failed to give good reasons for not giving controlling weight to Dr. Ward's opinion. (Dkt. No. 9 at 18 [Pl.'s Mem. of Law].) However, the ALJ states that "[Dr. Ward's opinion] is not fully consistent with the overall evidence including her own treatment notes." (T. 27.) As discussed above, this inconsistency justifies a lesser weight. Insofar as the ALJ did not explicitly recite the factors set forth in the regulations, the Second Circuit does not require a slavish recitation of the factors where it is clear, as here, that the ALJ followed the regulations. *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004).

Plaintiff also attacks a portion of the ALJ's reasoning in which she discounted Plaintiff's impairment by the fact that Plaintiff continued to work at substantial gainful activity levels after she reached "maximum medical improvement for carpal tunnel syndrome." (T. 25.) Plaintiff correctly notes that this fact does not preclude a worsening in her carpal tunnel symptoms. (Dkt. No. 9. at 23 [Pl.'s Mem. of Law].) However, it is Plaintiff, not Defendant, who bears the burden to show that she cannot perform her past relevant work. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980). Plaintiff therefore must show such a worsening for the ALJ's reasoning to be invalid. As discussed above, she has not done so.

9

Furthermore, Plaintiff's objections to the ALJ's treatment of her non-treating sources with regard to her physical impairments are without merit. Plaintiff argues that it was improper to give a greater weight to the opinion of Dr. Ramirez, who reviewed the breadth of Dr. Ward's treatment notes, than to the opinion of a consultative examiner. (Dkt. No. 9 at 18 [Pl.'s Mem. of Law].) Plaintiff cites *Cruz v. Sullivan* for the proposition that the opinions of "consulting physicians" who have never met Plaintiff should be given "limited weight." (Dkt. No. 9 at 20 [Pl.'s Mem. of Law], citing *Cruz v. Sullivan*, 912 F.2d 8 [2d Cir. 2000].) That case, however, is based upon regulations that have since been amended, and this proposition is no longer good law. *Medick v. Comm'r of Soc. Sec.*, 11-CV-0851, 2012 U.S. Dist. LEXIS 162764, at *26 (N.D.N.Y. June 21, 2012). Finally, while Dr. Ramirez may have rendered his opinion nearly a year before the date of the unfavorable decision, that fact is not significant. Nearly all of Dr. Ward's treatment notes are dated before Dr. Ramirez's opinion, and nothing in the record suggests that these notes were contradicted thereafter.

### B. Duty to Develop

Although the ALJ was entitled to assign lesser weight to the opinions of Dr. Ward, those opinions contained no statements regarding Plaintiff's mental limitations. In that regard, the ALJ considered the opinions of the Consultative Psychiatric Examiner, Dr. Ryan, and a non-examining medical source, Dr. Inman-Dundon. (T. 23-27.) The ALJ also mentioned a letter from Chenango County Community Mental Hygiene Services ("Chenango CMHS"), which included diagnoses for major depressive disorder and personality disorder-NOS. (T. 21.) She then stated that these two diagnoses were "established by the medical evidence." (*Id.*) The record does not contain treatment notes from Chenango CMHS.

Plaintiff argues that the ALJ had a duty to develop the record by issuing a subpoena for the records from Chenango CMHS. (Dkt. No. 9 at 23 [Pl.'s Mem. of Law].) In support of this argument, Plaintiff points out that the ALJ "was alerted to the existence of these records and advised by counsel that the policy of the agency was to not release records to counsel." (*Id.*)

The ALJ's duty to develop the record requires that she "*make every reasonable effort* to obtain from the individual's treating physician (or other treating health care provider) all medical evidence . . . necessary in order to properly make such a determination, prior to evaluating medical evidence obtained from any other source on a consultative basis." 42 U.S.C. § 423(d)(5)(B) (emphasis added). The question is, therefore, whether the ALJ's efforts were reasonable.

Plaintiff's attorney initially indicated that the record was complete at the beginning of the hearing. (T. 44.) At the end of the hearing, however, the attorney reported that Chenango CMHS would not send any records absent a subpoena. (T. 78.) The ALJ agreed to hold the record open for two weeks, or longer if the attorney needed more time. (T. 79.) The attorney agreed to ask Chenango CMHS for the records again; and, if he was unable to obtain them, he was instructed to write to the ALJ, who would obtain the records herself. (*Id.*) The record contains neither the treatment records, nor any letter from counsel requesting more time or informing the ALJ of his failure. The record does contain a letter from the ALJ to counsel, asking counsel to submit the records or explain why he could not do so. (T. 224.) In that letter, the ALJ made clear to counsel that if she did not receive a response to that letter, she would decide the case with the evidence before her. (*Id.*) There is no response in the record.

11

While the Court does not consider the case for precedential value, the Court finds the case of *Jordan v. Comm'r of Soc. Sec.* persuasive. 142 F. App'x 542 (2d Cir. 2005). In that case, although the ALJ did not contact or obtain records from a treating physician whom Jordan mentioned at his hearing, Jordan's counsel volunteered to secure the records, and the ALJ left the record open. *Jordan*, 142 F. App'x at 543. As here, the ALJ later contacted counsel "to remind him that no evidence had been received and that a decision would be made on the existing record unless such evidence was timely submitted." *Id.* Jordan did not thereafter request the ALJ's assistance in contacting the treating physician or obtaining treatment records, and the U.S. District Court the Northern District of New York (David N. Hurd, J.) found that the ALJ had satisfied his duty to develop the record. *Id*. The Second Circuit affirmed the Northern District's decision. *Id*.

Considering the facts outlined above, the Court finds that the ALJ made every reasonable effort to complete the record, and reasonably based her decision on the opinion of consultative examiner Dr. Ryan. (T. 23-24.) Finally, the Court notes that, where supported by the evidence of record, a consultative examiner's opinion can constitute substantial evidence. *Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995); *Frawley v. Colvin*, 13-CV-1567, 2014 WL 6810661 at *9 (N.D.N.Y. Dec. 2, 2014) (Kahn, J.).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is **<u>GRANTED</u>**; and it is further

**ORDERED** that the Commissioner's determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED.**

Dated: November 30, 2015
       Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge